Frank W. Byrne v. Commissioner.
Frank W. Byrne v. Commissioner
Docket No. 4290.
United States Tax Court
1945 Tax Ct. Memo LEXIS 90; 4 T.C.M. (CCH) 864; T.C.M. (RIA) 45282; September 7, 1945
Harold A. Kertz, Esq., for the petitioner. W. J. McFarland, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,200.85 in the petitioner's income tax for the calendar year 1941. The issues for decision are, (1) whether the petitioner sustained a long-term capital loss of $6,100 in 1941 because 61 shares of stock of the Windber Brewing Corporation which he owned became worthless in that year; (2) whether the corporation owed him a debt of $6,015.98 which became worthless in 1941 (3) whether he is entitled to a deduction of $2,000 representing the amount paid by him in settlement of a claim of an injured employee against the Brewing Corporation. Findings of Fact The petitioner was a resident *91 of Scottdale, Pennsylvania. He filed his income tax return for the calendar year 1941 with the collector of internal revenue for the 23d district of Pennsylvania, at Pittsburgh. The petitioner, his brother and several associates, organized the Windber Brewing Corporation in 1933 with a capital of $50,000 divided into 500 shares. The petitioner at that time acquired 61 shares of the stock of that corporation for $6,100. He became president and a director, but seldom visited the plant and did not take an active part in the affairs of the corporation. His brother became vice president and general manager. The incorporators anticipated that it would take several years to make the business successful. It never became successful. It reported operating losses on its income tax returns. Those for the years 1938, 1939 and 1940 amounted to over $110,000. Its debts had exceeded its assets for a number of years and at the end of 1940 the excess of liabilities to creditors over assets, as shown by its books, was $88,339.88. It ceased brewing beer in May 1940 and thereafter limited its activities to the refrigeration of 380 barrels of beer which it had on hand. Its real property was sold for 1938 *92 taxes in August 1940. It was adjudicated a bankrupt on December 13, 1940. Its properties were sold in the bankruptcy proceeding in 1941 for about $10,000. The stock became worthless prior to January 1, 1941. The petitioner, on his return for 1941, claimed a deduction of $8,100 which he explained, "Windber Brewing Company bankrupt - 1941 - cost of stock $8,100." The notice of deficiency covers the years 1940 and 1941 and determined an overassessment for the year 1940 for which year the Commissioner allowed a deduction of $4,050 as a long-term capital loss representing one-half of the cost of $8,100 of the Windber Brewing Corporation stock which the Commissioner held became worthless in the year 1940. He disallowed the deduction of $8,100 claimed on the petitioner's return for 1941 on account of this stock becoming worthless, on the ground that the stock became worthless prior to the year 1941. Account No. 4 of the Windber Brewing Corporation was in the name of the petitioner. It shows credits representing money advanced by him to the corporation for the operation of its business and it also contains entries representing salary from the corporation credited to him. The salary credited *93 to him was never actually paid to him and was not reported by him as income. The debits and credits up to, but not including December 31, 1936, were equal and balanced the account. $4,000, representing salary of the petitioner, was credited to the account on December 31, 1936. The credit balance in the account on June 1, 1939 amounted to $6,015.98, at which time the account was balanced by a debit of that amount and a note for the same amount was given to the petitioner. The credits to the account during the period of its existence represented advances made by the petitioner and salary of the petitioner, but the record does not show how much, if any, of the credit balance on June 1, 1939, represented advances made by the petitioner. The petitioner, on his income tax return for 1941, did not refer to any debt owed him by the Windber Brewing Corporation, but claimed the right to that deduction for the first time by an amended petition filed at the hearing in this case. The Workman's Compensation Board of Pennsylvania, on December 23, 1940, made an award of over $5,000 to Fred F. Zeigler to compensate him for injuries which he sustained on January 20, 1940 in an automobile accident *94 while traveling as a salesman employed by the Windber Brewing Corporation. The corporation did not carry Workman's Compensation Insurance as required by the laws of Pennsylvania. The petitioner's counsel advised him that he might be personally liable under the circumstances and, therefore, the petitioner paid Zeigler $2,000 on July 19, 1941 in full and final settlement of Zeigler's claim against the Windber Brewing Corporation. Opinion MURDOCK, Judge: The cost of the petitioner's stock in the Windber Brewing Corporation was $6,100 and not $8,100 as claimed on his return and accepted by the Commissioner in allowing a deduction for 1940. Apparently he added to his cost the $2,000 which went to Zeigler in settlement of his Workman's Compensation award. The Commissioner has held that the stock became worthless prior to 1941 and has allowed the loss as a deduction for 1940. This determination is strongly supported by the evidence. The petitioner in effect concedes that the stock was worthless prior to 1941 unless it derived value from the fact that the stockholders were trying to effect a reorganization and resume operations. The petitioner and his brother testified that they were hoping *95 and trying, up to the date of the sale of the bankrupt's property in 1941, to bring in new capital and to have the creditors compromise their claims. There is no evidence of any particular plan or that the creditors were ever interested. The financial history and condition of the corporation is strong evidence that any hope of reorganization in 1941 which would save anything for the stockholders was not justified. This record does not warrant a finding, contrary to the Commissioner's determination, that the stock had value at the beginning of 1941. The petitioner is asking for the allowance of a deduction of $6,015.98 as a worthless debt due to him from the Windber Brewing Corporation. He did not claim this deduction on his return and the Commissioner took no action in regard to it in determining the deficiency. It is a new claim raised for the first time in an amended petition filed at the hearing. The petitioner must start from scratch and his every contention is challenged by the Commissioner. He must show that there was due him a debt of the kind which would form the basis of a deduction when it became worthless. The evidence shows that he advanced money to the corporation from *96 time to time and that these advances were recorded on the books of the corporation in an account in the petitioner's name. The petitioner stated that the net amount due him as shown by this account, when it was closed on June 1, 1939, was correct, but his testimony showed that he knew nothing whatsoever about the account and he was not able to identify any item in it. The witness, Petonic, who was in charge of the books and who made many of the entries in the account in question, testified that the credit entries in the account consisted of advances made by the petitioner and amounts credited to his account as salary. The account was in balance on November 27, 1933 and again on March 12, 1936, and it is altogether possible that the advances all took place before the latter date. Petonic testified that $4,000 of salary was credited to the account on December 31, 1936. A deduction of $4,000 for salary for the petitioner was claimed on the income tax return for the corporation for 1936. Petonic did not shed any more light on the situation. We are unable to say that other entries were not salary, particularly entries crediting $400 on the last day of each month for 1937. The debit entries *97 to the account have not been explained. The credit balance in the account on June 1, 1939, in the amount of $6,015.98 was balanced by a debit and a note was given to the petitioner for that amount on that date. The petitioner on his income tax return for 1941 showed taxable income of over $8,000, but he did not claim any deduction for this debt. Perhaps, he realized that it was for salary which he had never reported and, therefore, he had no right to claim any deduction for a bad debt. Charles A. Collin, 1 B.T.A. 305. He testified that he had never received any salary from the corporation and we cannot infer, in the absence of proof, that he ever reported any. It is impossible to tell from this record how much of the credit balance in the account on June 1, 1939 was salary. Some substantial part of it, if not all, was salary. Part of it might have been for advances which were not offset by debits for repayments. The petitioner has failed to prove that he had a debt which would form the basis of a bad debt deduction and we need not decide the further question of whether a debt became worthless in 1941. The last issue is whether the petitioner is entitled to a deduction *98 of $2,000 representing the amount which he paid Zeigler in settlement of Zeigler's claim for Workman's Compensation. The record shows that Zeigler had a bona fide claim against the corporation for compensation under the award in an amount in excess of $5,000. The corporation had violated the law of Pennsylvania in not protecting its employees by taking out Workman's Compensation Insurance. The petitioner was a stockholder, a director and the president of the corporation and although he had not taken a very active part in conducting its affairs, nevertheless, his counsel advised him that he might be personally liable to Zeigler. While the advice may have been erroneous, nevertheless, it is not so clear that it was, and in view of the hopeless insolvency and bankruptcy of the corporation there certainly was some likelihood that Zeigler might try to collect something from the officers. The petitioner felt that it would be wise to try to compromise the claim. He succeeded and, as a result, he was out of pocket $2,000. He did not make the payment as a mere volunteer. This amount is deductible under section 23 (e), I.R.C., as a loss, not compensated for, incurred in *99 business or in a transaction entered into for profit. The petitioner was engaged in the business of being an officer and director of the corporation within the meaning of this section, also, his interest in the corporation from which the loss proximately resulted was a transaction which he entered into for profit, whether those profits were to come from salary as president and director, from dividends on his stock or from an increase in value of his stock. Decision will be entered under Rule 50.